Andre L. Verdun (SBN 265436)
LAW OFFICE OF ANDRE L VERDUN
401 West "A" Street, Ste. 1100
San Diego, CA 92101
Tel. (619) 880-0110
Fax. (866) 786-6993
Andre@VerdunLaw.com

Attorney for Plaintiff
Eric Trejo

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ERIC TREJO,** an individual,<br><br>Plaintiff,<br><br>vs.<br><br>**MARCUS DREW, DIANA NEVAREZ, CITY OF BELL GARDENS,** and **BELL GARDENS POLICE DEPARTMENT**, and **DOES 1-10**,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR A JURY TRIAL** |

Plaintiff Eric Trejo, alleges the following:

1.      Two police officers employed by the Bell Gardens Police Department of the City of Bell Gardens responded to a dispatch call that there was "suspicious activity" in the area. The description of the people of interest were two 17-year old males, one with a gray hoodie and the other with a red hoodie.

2.      Mr. Trejo, a 29-year old man, not wearing a hoodie, was unlawfully detained by the Officers without reasonable suspicion, along with a friend he had been talking to on the street, and a friend who was sitting in a car nearby. In an effort to

intimidate and cow Mr. Trejo into compliance Police Officer Drew pulled his Taser and pointed it at Mr. Trejo's chest, amounting to an unlawful arrest without probable cause.  Officer Drew also committed a battery on Mr. Trejo by kicking a beverage out of his hand while he was already sitting down, and then the Officers engaged in an unlawful search.  Fearing for his life, Mr. Trejo ran.  He was then handcuffed and imprisoned.  Mr. Trejo was prosecuted, but the charges were ultimately dismissed.

3.      Mr. Trejo suffers from Post-Traumatic Stress Disorder.  The above event caused him serve anxiety and emotional distress, fear, embarrassment, elevated heart rate, and exacerbated his condition.

## PARTIES

4.      Eric Mauricio Trejo ("Plaintiff") is, and at all times herein mentioned was, a natural person residing in the State of California, County of Los Angeles.

5.      Plaintiff is informed and believes that at all relevant times mentioned herein, Defendant CITY OF BELL GARDENS ("CITY") is a municipal corporation duly organized and existing under the laws of the State of California.

6.      Plaintiff is informed and believes that at all relevant times mentioned herein, Defendant BELL GARDENS POLICE DEPARTMENT ("BGPD") is a municipal corporation duly organized and existing under the laws of the State of California.

7.      Plaintiff is informed and believes that at all relevant times mentioned herein, CITY and BGPD and operate and oversee the Bell Gardens Police Department as an agency and department of the CITY and BGPD. For the purposes of this action, and in said capacity, Defendant CITY is responsible for and administers the BGPD, which in turn promulgate policies and practices for patrolling and policing various areas of Bell Gardens, including but not limited to the area near 5678 Shull Street, Bell Gardens, CA 90201.

/ / /

8.      Plaintiff is informed and believes that at all relevant times mentioned here, Defendant MARCUS DREW, Badge No. 552 ("DREW") is an officer, employee, and agent of the CITY, and BGPD.

9.      Plaintiff is informed and believes that at all relevant times mentioned here, Defendant DIANA NEVAREZ, Badge No. 540, ("NEVAREZ") is an officer, employee, and agent of the CITY and BGPD.

10.     Plaintiff is informed and believes that at all relevant times mentioned here, Defendant CITY and BGPD runs, operates, trains, oversees, administers, supervises, investigates, and is otherwise responsible for the conduct of Bell Gardens officers and employees, including both acts and omissions of Bell Gardens officers, employees and agents and other Bell Gardens workers.

11.     Plaintiff is informed and believes that at all times relevant Defendant CITY and BGPD, possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the Bell Gardens Police department, including those individuals charged with patrolling and policing the community, and to assure that said actions, policies, rules, regulations, practices and procedures of the Bell Gardens Police Department and its employees and agents comply with the laws and constitutions of the United States and the State of California.

12.     Plaintiff is informed and believes that at all times relevant, DEFENDANTS CITY and BGPD, DREW, NEVAREZ, and each of them, had the duty and responsibility to ensure that their duties were carried out consistent with all United States and California laws, were charged with the responsibility of maintaining the fitness and discipline of individual members of the BGPD, including those individuals charged with patrolling and policing the community, of ensuring that individual members of the BGPD, including those individuals charged with

patrolling and policing the community, complied with the policies and procedures of the CITY and BGPD, of ensuring that individual members of the BGPD, including those individuals charged with patrolling and policing the community, were aware of the policies and procedures of the CITY and BGPD, of ensuring that individual members of the BGPD, including those individuals charged with patrolling and policing the community, were properly trained in the policies and procedures of the CITY and BGPD, and of ensuring that individual members of the BGPD, including those individuals charged with patrolling and policing the community, complied with all laws of the United States and California.

13.     At all relevant time mentioned here, Defendant police officers of the BGPD (hereinafter "OFFICERS") were acting within the course and scope of their employment as peace officers and employees of the CITY and BGPD, which is liable under the principles of *respondeat superior* for these employees' tortious conduct pursuant to section 815.2 of the California Government Code.

14.     At all times relevant hereto, Defendant Officers employed and organized unlawful and illegal practices of unlawfully detaining, using excessive force and intentionally causing emotional distress upon innocent victims. Plaintiff is informed and believe and herein allege that said misconduct was known by, encouraged, tolerated and/or condoned by Defendant CITY, BGPD, DREW, and NEVAREZ.

15.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1-10 inclusive, are unknown to plaintiff who, therefore, sues said defendants by such fictitious names. Plaintiff will amend the complaint to show their true names and capacities when ascertained. Plaintiff is informed and believes, and therefore alleges, that each of said defendants is responsible in some manner for the events and happenings, and proximately caused the injuries and damages, hereinafter alleged.

## JURISDICTION

16.     Jurisdiction of the court arises pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343(3) and (4), et. seq.

17.     This Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367(a).

18.      Venue is proper in the Central District of California because the acts or omissions which form the basis of the Plaintiff's claims occurred in Bell Gardens, California, within the Central District.

## FACTUAL ALLEGATIONS

19.     Plaintiff is a Security Guard and a professional wrestler.

20.     For the past 7 years he has been training at the Santino Brothers Wrestling Academy in Bell Gardens about 4 times a week.  In addition to wrestling, Plaintiff is trained in many different areas of self-defense, including martial arts.

21.     On or about February 28, 2014, Plaintiff was training at the Wrestling Academy until about 10 pm that night.

22.      When class ended, he and his fellow wrestler friend, Jesse Zavala, began walking to the bus stop on Florence Avenue.

23.     As they were walking, Plaintiff noticed his friend, another wrestler, Charles Ramos, sitting in his car and asked for a ride to the bus stop.

24.     But before they get into Ramos' car, Officer Nevarez approaches in her patrol car with her lights flashing.

25.     Earlier that night, Officer Nevarez and Officer Drew were dispatched to the area in response to a report of "suspicious activity", with the descriptions of two teenage males, one in a grey hoodie and one in a red hoodie.

26.     At this point in time the officers had no right to detain Plaintiff.

27.     Plaintiff and his friends did not match this description.  At that time, Plaintiff was 29, and the other two detained were 32 and 26 years old.

28.     Plaintiff was not wearing a red or gray hoodie, and neither was his friend Jesse.

29.     Even though Plaintiff and his friends did not match the description of the alleged suspects, Officer Nevarez got out of her car and asked them to sit on the curb.  Jesse went to the curb, but Plaintiff did not.  Ramos remained in his car at first.

30.     Plaintiff was tired and just wanted to go home.  Plaintiff then asked Officer Nevarez why he was being detained, whether he was suspected of committing a crime, and she would not give him a clear answer.

31.     Although Officer Navarez admitted the men were not even under suspicion she told them they were not free to leave, and thus unlawfully detained them.

32.     In the course of this detainment, neither Officer Drew nor Officer Nevarez would tell Trejo why he was being detained, despite his repeated requests.

33.     Why he was being detained was very important to Plaintiff.  In the past, he had been detained several times, held in the back of police cars, handcuffed, asked to sit in a particular spot for a very long time, all to then be released without ever knowing why.

34.     If Plaintiff was going to be detained and stuck on a curb at 10 pm at night when he was trying to get home, he wanted to know why.

35.     Part of the conversation on April 28, 2014, at 10:41 p.m., went as follows:

**OFFICER NERVAREZ:** --DIDN'T SAY YOU WERE UNDER ARREST. I SAID TAKE A SEAT.

**TREJO:** SO, I'M FREE TO GO?

**OFFICER NEVAREZ:** TAKE A SEAT, SIR. YOU ARE NOT FREE TO GO.

**TREJO:** (UNINTELLIGIBLE)

**OFFICER NEVAREZ:** COULD YOU PLEASE TAKE A SEAT?

**TREJO:** I JUST WANT TO KNOW WHAT CRIME WAS COMMITTED.

-6-
**COMPLAINT**

1 **OFFICER NEVAREZ:** OK, ONCE YOU TAKE A SEAT, I'LL EXPLAIN WHAT IS GOING ON.

2 **TREJO:** (UNINTELLIGIBLE) TRAVEL FREE AND

3 UNINTERRUPTED…(UNINTELLIGBLE)…IF I HAVE COMMITTED A CRIME, THAT'S ALL I NEED TO KNOW.

5 **OFFICER NEVAREZ:** THAT'S WHAT I'M TRYING TO FIGURE OUT.

6 **TREJO:** SO I'M ALREADY UNDER SUSPICION?

7 **OFFICER NEVAREZ:** NO YOU'RE…COULD YOU PLEASE TAKE A SEAT, SIR?

8 **TREJO:** WELL THAT DEPENDS ON IF I COMMITTED A CRIME.

9 **OFFICER NEVAREZ:** THAT'S WHAT I'M TRYING TO FIGURE OUT. WE'RE JUST HERE BECAUSE WE RECEIVED A CALL.

10 **TREJO:** AND, WHAT, UH, WHAT…

11 **OFFICER NEVAREZ:** I'LL EXPLAIN IT YOU ONCE YOU TAKE A SEAT.

12 **TREJO:** IF I'M NOT UNDER ARREST, NOT UNDER ARREST, I'M FREE TO MOVE AS I PLEASE.

13 **OFFICER NEVAREZ:** YOU'RE NOT FREE TO LEAVE, BECAUSE I GOT A CALL. OK?

14 **TREJO:** THAT'S UH, A REPORT OF ILLEGAL ACTIVITY, AND I, UH, HAVE NOT

15 BEEN IDENTIFIED AS ANYBODY.

16 **OFFICER NEVAREZ:** GO AHEAD AND TAKE A SEAT. HOW DO YOU KNOW? THAT'S WHAT I'M TRYING TO FIGURE OUT, SIR.

17 **TREJO:** WHAT IS YOUR PROBABLE CAUSE?

18 **OFFICER DREW:** WHAT'S YOUR NAME?

19 **TREJO:** AM I UNDER ARREST?

20 **OFFICER DREW:** SIT THE FUCK DOWN, THAT'S WHAT I'M SAYING! RIGHT NOW! YOU'RE BEING DETAINED! THERE'S NO MORE DISCUSSION! SIT DOWN!

21 **TREJO:** I'M PROTECTED BY MY CONSTITUTIONAL RIGHTS.

22 **OFFICER DREW:** SIT DOWN BEFORE I PUT YOU DOWN!

23 **OFFICER NEVAREZ:** YOU NEED TO TAKE A SEAT SIR.

24 **DEFENDANT:** WHAT IS YOUR BADGE NUMBER?

25 **OFFICER DREW:** SIT DOWN!

26 **DEFENDANT:** I NEED TO KNOW YOUR BADGE NUMBER. YOU'RE OBLIGATED TO GIVE IT TO ME.

27 **OFFICER NEVAREZ:** TAKE A SEAT, WE'LL GIVE YOU WHATEVER YOU WANT. YOU

28 JUST NEED TO TAKE A SEAT.

**DEFENDANT:** I'M FEELING VERY UNCOMFORTABLE AND INTIMIDATED RIGHT NOW.

**COMPLAINT**

**OFFICER NEVAREZ:** GO AHEAD AND TAKE A SEAT SIR-

**DEFENDANT:** -I DON'T FEEL COMFORTABLE TAKING A SEAT.

**OFFICER NEVAREZ:** -THERE'S NO REASON FOR YOU TO BE, SIR-

**DEFENDANT:** THE OFFICER HERE THREATENED TO TAKE ME DOWN.

36.    Despite Trejo stating he was feeling intimidated Officer Drew approaches him, and in an effort to intimidate and cow Mr. Trejo into compliance Police Officer Drew pulled his Taser and pointed it at Mr. Trejo's chest, amounting to an unlawful arrest without probable cause.

37.    Trejo attempted to exercise his First Amendment Rights, and was assaulted for it, with Officer Drew violently kicking a drink out of Mr. Trejo's hand while Mr. Trejo was sitting on the curb, and then sternly saying, "Don't move, I swear to God don't move".

38.    Another part of the conversation on April 28, 2014, at 10:41 p.m., went as follows:

**DEFENDANT:** SPECIFICALLY, WHAT IS THE DESCRIPTION?

**OFFICER DREW:** PEOPLE WHO LOOK LIKE YOU.

**DEFENDANT:** AND WHAT IS THE SPECIFIC DESCRIPTION?

**OFFICER DREW:** THAT'S ALL YOU'RE GONNA GET BRO. I'M NOT GOING TO TELL YOU HOW I DO MY JOB, ALRIGHT?

**DEFENDANT:** WELL, I AM CONSTITUTIONALLY PROTECTED, AND YOU ARE-

**OFFICER DREW:** YOU'RE NOT CONSTITUTIONALLY ABLE TO JUST ASK ME QUESTIONS RIGHT NOW.

**DEFENDANT:** FIRST AMENDMENT.

**OFFICER DREW:** YOU'RE BEING DETAINED.

**DEFENDANT:** FIRST AMENDMENT RIGHTS.

**OFFICER DREW:** GOT I.D. WITH YOU?

**DEFENDANT:** AM I UNDER ARREST?

**OFFICER DREW:** PUT YOUR CAN DOWN.

**DEFENDANT:** AM I UNDER ARREST?

**COMPLAINT**

**OFFICER DREW:** PUT YOUR CAN DOWN.

**DEFENDANT:** SIR, AM I UNDER ARREST?

**OFFICER DREW:** DROP YOUR CAN.

**DEFENDANT:** AM I UNDER ARREST, SIR? AM I UNDER ARREST?

**OFFICER DREW:** I'M GOING TO TAKE THIS FROM YOU.

**DEFENDANT:** SIR, THAT'S---

**OFFICER DREW:** DON'T MOVE. I SWEAR TO GOD. DON'T MOVE.

39.      Then, in the next part of the conversation on April 28, 2014, at 10:41 p.m.,
Officer Drew engages in an illegal search without probable cause:

**OFFICER NEVAREZ:** SEPARATE YOUR FEET.

**OFFICER DREW:** DROP THAT BACKPACK. RIGHT NOW. DROP IT… KICK YOUR FEET
OUT IN FRONT OF YOU AND CROSS YOUR ANKLES. DO IT. CROSS YOUR ANKLES IN
FRONT OF YOU. RIGHT NOW… DON'T MOVE FROM THAT POSITION…..SIMPLE FOLLOW
INSTRUCTIONS. THAT'S ALL I'M ASKING. THAT'S ALL SHE'S ASKING.

**DEFENDANT:** I WILL NEED YOUR, UH, BADGE NUMBER.

**OFFICER DREW:** OH, YOU'LL GET IT ALL, TRUST ME.

**DEFENDANT:**  GOOD. I WILL BE FILING A REPORT OF AN ASSAULT.

**OFFICER DREW:** RIGHT NOW, YOU'RE NOT GOING TO SAY ANYTHING. CONTINUE TO
COOPERATE. SIMPLE AS THAT.

**OFFICER NEVAREZ:** GO AHEAD AND TAKE A SEAT. PUT YOUR FEET OUT IN FRONT
OF YOU.

**DEFENDANT:** I WILL CONFER BECAUSE I'M UNDER DURESS TO DO SO-

**OFFICER DREW:** THAT'S RIGHT.

**DEFENDANT:** -AND THERE WILL BE A…

**OFFICER NEVAREZ:** PUT YOUR FEET OUT IN FRONT OF YOU AND CROSS THEM. GO
AHEAD AND STAND UP.

**MALE VOICE:** CAN I REMOVE MY HANDS FROM HERE?

**OFFICER NEVAREZ:** PUT THEM ON TOP OF YOUR KNEES. SIMPLE. YOU COOPERATE
AND YOU'RE DONE. YOU'RE OUT OF HERE.

**DEFENDANT:** THE VIOLATION OF MY CONSTITUTIONAL RIGHTS THAT YOU'RE
COMMITTING RIGHT NOW. THAT YOU SWORE TO PROTECT. AND I KNOW YOU TOOK
THAT OATH. DID YOU FORGET?

**OFFICER DREW:** I AIN'T ANSWERING YOUR QUESTIONS, BRO.

**COMPLAINT**

**DEFENDANT:** I DON'T NEED TO ANSWER YOURS EITHER.

**OFFICER DREW:** YOU DO NEED TO COOPERATE.

**DEFENDANT:** NOT WHEN THERE IS AN ILLEGAL ORDER. THIS IS ILLEGAL. YOU SHOULDN'T HAVE KICKED MY CAN. YOU COULD'VE BROKEN MY FINGER.

**OFFICER DREW:** YOU'RE RIGHT.

**DEFENDANT:** YEAH, PROTECT AND SERVE, HUH?

**OFFICER NEVAREZ:** GO AHEAD AND TAKE A SEAT PUT YOUR FEET OUT IN FRONT OF YOU AND CROSS THEM.

**DEFENDANT:** YOU CANNOT CHECK THAT. I DID NOT… I DID NOT GIVE YOU THE RIGHT TO CONFISCATE MY BAG. NO. I DIDN'T GIVE YOU THE RIGHT TO CONFISCATE IT.

**OFFICER DREW:** DROP IT. RIGHT NOW.

**DEFENDANT:** NO, I HAVE NOT VIOLATED ANY CONSTITUTIONAL RIGHT. MY FOURTH AMENDMENT RIGHTS PROTECT ME FROM ILLEGAL SEARCH AND SEIZURE. DO YOU HAVE A WARRANT?

**OFFICER DREW:** YOU'RE ABOUT TWO SECONDS FROM GOING TO JAIL.

**DEFENDANT:** DO YOU HAVE A WARRANT?

**OFFICER DREW:** DROP THAT. RIGHT NOW.

**OFFICER NEVAREZ:** YOU NEED TO UNDERSTAND SOMETHING. YOU NEED TO UNDERSTAND SOMETHING. WE'RE HERE WITH A LAWFUL REASON. WE GOT A CALL LOITERING OF SUSPECTS. OK? YOU NEED TO UNDERSTAND. WE'RE NOT VIOLATING ANY RIGHTS--

**DEFENDANT:** OH, YES YOU ARE.

**OFFICER NEVAREZ:** LET ME FINISH—

**DEFENDANT:** AND MY LAWYER IS GOING TO FIND ABOUT THIS.

**OFFICER NEVAREZ:** --THAT'S FINE, YOU HAVE EVERY RIGHT TO DO THAT.

**DEFENDANT:** MY LAWYER IS GOING TO FIND ABOUT THIS. YOU KNOW I DO-

**DEFENDANT:** YOU DON'T NEED TO TELL ME WHAT RIGHTS I HAVE.

**OFFICER NEVAREZ:** SO, AM I MAKING MYSELF CLEAR? WE HAVE EVERY RIGHT TO BE HERE AND TO DETAIN YOU.

**DEFENDANT:** WITHOUT EVEN HAVING TOLD US WHAT CRIME WE HAVE COMMITTED? I DON'T THINK SO.

**OFFICER NEVAREZ:** I TOLD YOU, SIR, I JUST TOLD YOU.

**DEFENDANT:** YOU HAVE A REPORT OF ILLEGAL ACTIVITY. YOU HAVE NO PROOF THAT IT IS ANY OF US THAT HAVE COMMITTED IT.

**COMPLAINT**

40.   After being detained and not being told why, being intimidated and threatened with a Taser, and then being the victim of a battery - having a can violently kicked out of his hand, Plaintiff was very scared and experienced significant anxiety.

41.   Officer Nevarez then asked Plaintiff to stand, which he did, and Officer Drew began to pat Plaintiff down.

42.   When Plaintiff asked Officer Drew not to touch him, and Officer Drew began physically curling Plaintiff's wrists behind him, Plaintiff felt completely unsafe and helpless, and felt he had no choice but to run, which he did, leaving his belongings behind.  Plaintiff was then caught and arrested for running away.

43.   In May 2015, Plaintiff was tried for resisting, obstructing, delaying a peace officer in violation of Penal Code Section 148(a)(1), Case Number 4DY04986. After the jury was unable to reach a verdict, the California Superior Court declared a mistrial and the prosecution dismissed the case.

## FIRST CAUSE OF ACTION – 42 U.S.C. § 1983 UNLAWFUL SEIZURE AND DETENTION, UNLAWFUL WARRANTLESS SEARCH, UNLAWFUL WARRANTLESS ARREST, DUTY TO INVESTIGATE, MALICIOUS PROSECUTION, ABUSE OF PROCESS, RETALIATORY PROSECUTION, Against NEVAREZ AND DREW

44.   Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

45.   The Fourth Amendment to the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the

place to be searched and the persons or things to be
seized.

46.     NEVAREZ and DREW illegally seized and detained Plaintiff without probable cause, reasonable suspicion, and/or warrant, and DREW used excessive force upon him by virtue of using the Taser on Plaintiff to intimidate and keep him detained transformed the stop into an unlawful arrest.

47.     NEVAREZ and DREW illegally searched Plaintiff and his bag in violation of his Fourth Amendment rights.

48.     NEVAREZ and DREW illegally, without a warrant, without reasonable suspicion, and without probable cause, arrested and imprisoned Plaintiff in violation of his Fourth Amendment rights. Plaintiff was arrested, imprisoned in retaliation for exercising his 1st amendment rights.

49.     NEVAREZ and DREW illegally and without probable cause, prosecuted Plaintiff in a manner that constituted malicious prosecution and abuse of process, in violation of his Fourth Amendment rights. Plaintiff was prosecuted in retaliation for exercising his 1st amendment rights.

50.     Specifically, as it relates to malicious prosecution, NEVAREZ and DREW wrongfully caused a criminal proceeding to be brought against Plaintiff in Los Angeles County Court; NEVAREZ and DREW was actively involved in causing Plaintiff to be prosecuted and/or in causing the continuation of the prosecution; the criminal proceeding ended in Plaintiff's favor; no reasonable person in NEVAREZ and DREW's circumstances would have believed that there were grounds for causing Plaintiff to be arrested or prosecuted; NEVAREZ and DREW acted primarily for a purpose other than to bring Plaintiff to justice; Plaintiff was harmed in the manner set out above; but additionally, Plaintiff incurred $12,500 in attorney's fees to defend himself in a criminal state action; and, NEVAREZ and DREW's conduct was a substantial factor in causing Plaintiff's harm.

-12-

**COMPLAINT**

51.     Specifically, as it relates to abuse of process, NEVAREZ and DREW wrongfully initiated a criminal prosecution on a misdemeanor complaint by citing Plaintiff for misdemeanor Penal Code § 148 and submitting the citation to the Los Angeles District Attorney's Office for criminal prosecution without probable case to believe Plaintiff committed a crime and in retaliation against Plaintiff for exercising his First Amendment Rights; NEVAREZ and DREW intentionally used this legal procedure for an improper purpose that procedure was not designed to achieve when it submitted a citation for prosecution against Plaintiff without probable cause to believe a crime had been committed, and for retaliation against Plaintiff for exercising his First Amendment rights; Plaintiff was harmed in the manner set out above; but additionally, Plaintiff incurred $12,500 in attorney's fees to defend himself in a criminal state action; and, NEVAREZ and DREW's conduct was a substantial factor in causing Plaintiff's harm.

52.     In so doing, NEVAREZ and DREW deprived Plaintiff of his Constitutional rights under the Fourth Amendment to the United States Constitution.  The injuries sustained by Plaintiff were as a direct result of the widespread refusal to properly train deputies on the proper way to determine which persons to detain, the proper way to detain them, and what force may or may not be used. This creates a substantial risk of harm to citizens as stated above that CITY AND BGPD, and BGPD created, and by virtue of failing to correct the constitutional violations of their Officers, shows a custom of deliberate indifference to those actions.

53.     In committing the acts and omissions alleged herein, NEVAREZ and DREW acted in the course and scope of their employment, and thereby acted under the color of state law.  At no time did Plaintiff give consent to Defendants' unlawful actions, and the rights Defendants were violating were clearly established.

54.     In committing the acts and omissions alleged herein, NEVAREZ and DREW acted with malice, oppression, and fraud.  Accordingly, Plaintiff is entitled to

**COMPLAINT**

obtain punitive damages from the Officer Defendants in an amount sufficient to punish and deter such conduct, according to proof at the time of trial.

<u>**SECOND CAUSE OF ACTION – 42 U.S.C. § 1983 EXCESSIVE FORCE Against DREW**</u>

55.     Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

56.     Plaintiff has a firmly established right under the Fourth Amendment to be free from official infliction of physical abuse, assault, and emotional distress.

57.     Plaintiff has a firmly established right to be free from excessive force being used against him.

58.     In effectuating their unlawful detention of Plaintiff, Defendant OFFICER DREW used unreasonable and excessive force upon Plaintiff when DREW, in an effort to intimidate and cow Mr. Trejo into compliance turned on and pointed a Taser at him, then kicked a soda can out of his hand without warning, and physically curled his wrists behind his back.

59.     As Plaintiff was not lawfully detained as he did not match the description in any way of the suspects DREW and NEVAREZ were seeking, and then Plaintiff has unreasonable and excessive force used against him in order to keep him detained, such actions violate Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments of the United States Constitution.

60.     There was no need for use of any force in this situation because there was no force being used or threatened against the Officers by Plaintiff.

61.     At no time did Plaintiff consent to any of DREW's unlawful actions described herein.  Plaintiff further alleges that all Defendants acted in the course and scope of their employment with the BGPD thereby acting under the color of state law.

62.     Plaintiff was damaged as a result of Defendant's conduct.

**COMPLAINT**

63.    At no time could a reasonable officer in the position of have believed that Plaintiff posed a threat either to the officers or anyone else, nor could a reasonable officer have believed that the amount and degree of force employed was reasonably necessary to detain Plaintiff.

64.    As such, the degree of force used against Plaintiff was without probable cause, reasonable grounds, or other justification, thereby violating Plaintiff's dignity and bodily integrity, invading his privacy, and proximately and foreseeably causing Plaintiff damage and injury.

65.    During the relevant period, Defendants were acting under color and pretense of law, to wit: under color of statutes, ordinances, regulations, customs, policies, and usages of the State of California and the County of Los Angeles.

66.    Because no force was justified, DREW's use of any force against Plaintiff was a *per se* violation of his Constitutional rights.

67.    The conduct alleged herein caused Plaintiff to be deprived of his civil rights that are protected under the United States Constitution which has also legally, proximately, foreseeably and actually caused Plaintiff to suffer emotional distress, pain and suffering, and further damages according to proof at the time of trial.

68.    The conduct alleged herein was done in deliberate or reckless disregard of and plaintiff's constitutionally protected rights; justifying the award of exemplary damages against Defendant officers in an amount according to proof at the time of trial in order to deter the defendant from engaging in similar conduct and to make an example by way of monetary punishment.

69.    In committing the acts alleged herein, DREW acted with malice and oppression.  Plaintiff therefore is entitled to punitive damages against Defendant Officers in an amount sufficient to punish and deter such conduct, according to proof at the time of trial.

/ / /

**COMPLAINT**

## THIRD CAUSE OF ACTION – 42 U.S.C. § 1983 RETALIATION FOR EXERCISE OF FIRST AMENDMENT Against DREW

70.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

71.    When approached by NEVAREZ, Plaintiff immediately asked what crime was committed and whether he was under arrest. When Plaintiff then asked Officer DREW if he was under arrest, he was told to sit the fuck down.  When Plaintiff said that he was protected by his Constitutional rights, Officer Drew told Plaintiff to sit down, or that he would put him down.  In the course of the stop, Officers retaliated against Plaintiff for asking questions for their badge number and why was being detained by threatening to Taser him and kicking a can out of his hand.

72.    In committing the acts alleged herein, DREW acted with malice and oppression.  Plaintiff therefore is entitled to punitive damages against Defendants in an amount sufficient to punish and deter such conduct according to the proof at the time of trial.

## FOURTH CAUSE OF ACTION – _MONELL_ CLAIM UNDER 42 U.S.C. § 1983 Against Defendant CITY AND BGPD

73.    Plaintiff realleges all prior paragraphs of this complaint and incorporates the same herein by this reference.

74.    Plaintiff alleges that all Defendants carried out the acts complained of in their individual and official capacities, in the course and scope of their employment, and under color of law.

75.    Regarding all actions and causes of action herein alleged and stated, all governmental defendants (including all DOE defendants) violated rights held by Plaintiff that were clearly established and which they had a mandatory duty to uphold. No reasonable official similarly situated to any of the Defendants could have believed that his/her conduct was lawful or within the bounds of reasonable

discretion. All individual Defendants, including all individual DOE Defendants, thus lack immunity from suit or liability. This extends both to statutorily created immunity and to the judicially created doctrine of "qualified immunity".

76.    Defendant CITY AND BGPD are also liable for the violations of Plaintiff's federal constitutional rights brought under 42 U.S.C. § 1983 based upon Plaintiffs' *Monell* cause of action. The bases for the CITY AND BGPD's liability in this context include, but are not limited to:

        a. A policy of detaining people without reasonable suspicion, and a failure to properly train officers in that regard;

        b. A policy of threatening persons with Tasers in an effort to intimidate and cow them into compliance, without probable cause and when such persons do not pose a threat of immediate harm and are not fleeing the scene. This liability is direct and is based on the causes of action brought against the policy-making Defendants (to wit, CITY and BGPD);

        c. A policy of searching people without probable cause, and a failure to properly train officers in that regard.

        d. A policy of committing assault and battery, and a failure to properly train officers in that regard.

77.    Additionally, Plaintiff is informed and believes and, on the basis of such information and belief, alleges that Defendants CITY and BGPD acted with deliberate indifference, gross negligence, and reckless disregard for the safety, security, and constitutional and statutory rights of Plaintiff and all persons similarly situated, maintained, enforced tolerated, permitted, acquiesced in, and applied policies, practices, or customs or, amongst other things:

        a. Permitting Tasers to be used to intimidate and cow one into compliance;

        b. Permitting Tasers to be pointed at detainees, even when those detainees

**COMPLAINT**

THE LAW OFFICES OF:
ANDRE L. VERDUN

are not being properly detained;

c.  Permitting Tasers to be pointed at detainees when such detainees do not pose an immediate physical threat to the police or the public at large;

d.  Permitting Tasers to be pointed at detainees when they are neither fleeing nor about to flee the scene;

e.  Permitting Tasers to be pointed at detainees in order to intimidate them; and

f.   Permitting Tasers to be pointed at detainees in order to stop them from asking why they are being detained.

g.  A policy of detaining people without reasonable suspicion, and a failure to properly train officers in that regard;

h.   A policy of threatening persons with Tasers in an effort to intimidate and cow them into compliance, without probable cause and when such persons do not pose a threat of immediate harm and are not fleeing the scene.  This liability is direct and is based on the causes of action brought against the policy-making Defendants (to wit, CITY AND BGPD);

i.  A policy of searching people without probable cause, and a failure to properly train officers in that regard.

78.    In fact, at Plaintiff's criminal trial, NEVAREZ testified that DREW followed BGPD procedure when he pointed the Taser at Plaintiff because Plaintiff did not sit down on the curb as instructed.

79.    Plaintiff is informed and believes and, on the basis of such information and belief, alleges that Defendant CITY and BGPD, ordered, authorized, acquiesced in, tolerated, or permitted Defendants NEVAREZ and DREW to engage in the unlawful and unconstitutional actions, policies, practices, and customs set forth in the foregoing paragraph and ratified that conduct.

-18-

**COMPLAINT**

80.     Defendants NEVAREZ and DREW'S conduct alleged herein constitutes a pattern of intimidation, illicit law enforcement behavior, and statutory and constitutional violations based either on a deliberate plan by Defendants CITY and/or BGPD, or deliberate indifference, gross negligence, or reckless disregard, to the safety, security, and constitutional and statutory violations of Plaintiff and all persons similarly situated.

81.     Plaintiff is informed and believes, and on the basis of such information and belief, alleged that Defendant CITY and BGPD subsequently ratified the acts and related acts of NEVAREZ and DREW, including the acts that are the subject of this lawsuit, against a number of persons involved in this and other events by, amongst other things, its City officials failing to take any actions in response to being fully informed of the actions of its deputies.

82.     Under California Government Code §815.2 Defendant CITY and BGPD are liable for any and all wrongful acts hereinafter complained of committed by any of the individual officer Defendants.

83.     Defendant CITY and BGPD promulgated and maintained an unconstitutional policy, ordinance or regulation which allowed its police officers to use of force in violation of the rights of citizens.

84.     Defendant CITY AND BGPD was deliberately indifferent to the widespread misconduct on the part of BGPD police officers in detaining citizens who had committed no crimes.

85.     Defendant CITY and BGPD was deliberately indifferent to the widespread misconduct on the part of Officers in the application of unnecessary and excessive use of force.

/ / /

/ / /

/ / /

**COMPLAINT**

86.     Defendant CITY and BGPD was deliberately indifferent to the widespread use of Tasers by its officers and failed to set forth appropriate policy regarding the use of the Taser as required by *Bryan v. MacPherson*, 590 F.3d 767 (9th Cir. 2009).

87.     During the relevant period, defendant police officers, NEVAREZ and DREW were acting pursuant the policy of Defendant CITY and BGPD.

88.     Defendant CITY and BGPD knew or should have known of the risks posed by the Department's policies regarding the improper and excessive use of force and the use of the Taser.

89.     Defendant CITY and BGPD was deliberately indifferent to the right of Plaintiff Trejo to be free from, and protected from, harm by the brutality of officers and to be secure in their bodily integrity.

90.     As a direct result, plaintiffs were assault, intentionally and negligently inflicted with emotional distress and their Constitutional rights were violated.

91.     The unlawful and illegal conduct of the defendant deprived plaintiffs of the rights, privileges and immunities secured to them by the Constitutions of the United States and of the State of California.

92.     As a direct, proximate and foreseeable result, Plaintiffs suffered damages in an amount according to proof at the time of trial.

    **WHEREFORE**, Plaintiff respectfully prays that judgment be entered against the Defendants for the following:

    A. Entering judgment for compensatory, general, and special damages in an amount in accordance with proof.

    B. Entering judgment for exemplary (punitive) damages against each of the individual defendants in an amount sufficient to punish and to make an example of said defendants, and to deter said defendants and others from engaging in similar conduct.

**COMPLAINT**

C. Awarding reasonable attorney's fees, expenses, and costs of suit.

D. Granting such other and further relief as the Court deems proper

E. For such other and further relief as may just and proper.


Dated: **April 17, 2017**

                              ___/s/ Andre L. Verdun____
                              Andre L. Verdun
                              Attorney for Plaintiff,
                              Eric Trejo


## **DEMAND FOR JURY TRIAL**

   **NOW COMES** Plaintiff, Eric Trejo, by and through his attorney, Andre L. Verdun, and hereby demands a trial by jury in the above-captioned matter.


Dated: **April 17, 2017**              _

                              _/s/ Andre L. Verdun____
                              Andre L. Verdun
                              Attorney for Plaintiff,
                              Eric Trejo

**COMPLAINT**